JOHNSON, J.,
dissents with reasons.
hi respectfully disagree with the majority opinion and find that plaintiffs’ case is prescribed.
As properly stated by the majority, the mover bears the burden of proof on an exception of prescription. If the petition is prescribed on its face, the burden shifts to the plaintiff to negate the presumption by establishing prescription has been suspended or interrupted. Taranto v. Louisiana Citizens Property Insurance Corp., 10-105, p. 5 (La.3/15/11), 62 So.3d 721, 726.
Contrary to the majority’s conclusion that the trial court found plaintiffs’ petition was prescribed on its face and, thus, the trial court properly shifted the burden to plaintiffs to prove their suit was not prescribed, the record shows that prior to the hearing on the exception of prescription, the trial court actually determined that plaintiffs’ lawsuit was not prescribed on its face. The law is clear that if the petition is not prescribed on its face, the mover, or Exxon Mobil, bears the burden of proving prescription. Thus, the trial court once it concluded plaintiffs’ petition was not prescribed on its face, the trial court improperly shifted the burden to plaintiffs to prove the interruption or suspension of prescription or the application of contra non valentem. Because this is legal error, this |2Court’s review of the prescription *163 issue should be de novo.[1] Upon conducting a de novo review, I find plaintiffs’ lawsuit is prescribed.
Delictual actions are subject to a libera-tive prescription of one year from the date of injury or damage. La. C.C. art. 3492. Prescription runs against all persons unless excepted by legislation. La. C.C. art. 3467. The jurisprudential doctrine of contra non valentón is an exception to this statutory rule. Marin v. Exxon Mobil Corp., 09-2368, p. 11 (La.10/19/10), 48 So.3d 234, 245.
Contra non valentem applies in four factual situations to prevent the running of prescription: (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiffs action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant. Id. at 12, 48 So.3d at 245.
The fourth category, also known as the discovery rule, “prevents the running of liberative prescription where the cause of action is not known or reasonably knowable by the plaintiff.” Cole v. Celotex Corp., 620 So.2d 1154, 1156 (La.1993). Under this category of contra non valen-tem, prescription begins to run when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he is the victim of |sa tort. Campo v. Correa, 01-2707, pp. 11-12 (La.6/21/02), 828 So.2d 502, 510. Constructive knowledge is “whatever notice is enough to excite attention and put the injured party on guard and call for inquiry.” Id., 01-2707 at 12, 828 So.2d at 510-11. “Prescription will not begin to run at the earliest indication that a plaintiff may have suffered some wrong.” Cole, 620 So.2d at 1157. Mere apprehension by a plaintiff that something is wrong is insufficient to commence the running of prescription “unless the plaintiff knew or should have known through the exercise of reasonable diligence that his problem may have been caused by acts [of the defendant.]” Campo, 01-2707 at 12, 828 So.2d at 511.
The Louisiana Supreme Court has observed the difficulty in identifying the precise point in time at which a claimant becomes aware of sufficient facts to begin the running of prescription, and has explained that when prescription begins to run depends on the reasonableness of a plaintiffs action or inaction. Cole, 620 So.2d at 1157. The reasonableness of a plaintiffs action or inaction is considered in light of his education, intelligence, severity of the injury, and the nature of the defendant’s conduct. Campo, 01-2707 at 12, 828 So.2d at 511. Contra non valen-tem will not apply to exempt a plaintiffs claim from the running of prescription “if his ignorance is attributable to his own willfulness or neglect; that is, a plaintiff *164 will be deemed to know what he could by reasonable diligence have learned.” Marin, 09-2368 at 13, 48 So.3d at 246.
Regarding the Pollard plaintiffs, Exxon Mobil contends these five plaintiffs had constructive knowledge of their possible exposure, which sufficiently triggered the running of prescription, several years before they filed suit in May 2001. As for the ten non -Pollard plaintiffs, Exxon Mobil contends the doctrine of contra non valen-tem did not apply to prevent the |4running of prescription because it did nothing to prevent plaintiffs from filing suit. Exxon Mobil further asserts that prescription began to run once plaintiffs knew or should have known of their exposure to NORM, which the trial court determined was when the verdict in the Grefer lawsuit was reported in the media on May 23, 2001. Although Exxon Mobil disagrees with this factual determination of the trial court, it maintains that even under these facts, the claims of the non -Pollard plaintiffs prescribed on May 23, 2002, seven months before they filed suit on December 20, 2002. Exxon Mobil further contends that this Court’s decision in Lester v. Exxon Mobil Corp., 09-1105 (La.App. 5 Cir. 6/29/10), 42 So.3d 1071, writ denied, 10-2244 (La.12/17/10), 51 So.3d 14, makes it clear that the Pollard suit filed on May 23, 2001 did not suspended prescription for the present plaintiffs because they expressly opted out of the class action suit when they filed a separate lawsuit in December 20, 2002. Exxon Mobil further asserts the amending petition, filed on October 24, 2003, adding Ernesto Soto as a plaintiff did not relate back to the filing of the original petition and, thus, for the same reasons applicable to the non-Pollard plaintiffs, Mr. Soto’s claims are prescribed.
Plaintiffs respond that they did not have sufficient opportunity for reasonable inquiry to initiate the running of prescription more than one year before suit was filed in December 2002. They maintain prescription did not begin to run at the earliest possible indication that they suffered a wrong. Plaintiffs further contend that this Court’s decision in Lester, supra, is contrary to Pitts v. Louisiana Citizens Property Ins. Corp., 08-1024 (La.App. 4 Cir. 1/7/09), 4 So.3d 107, writ denied, 09-286 (La.4/3/09), 6 So.3d 772, and Taranto v. Louisiana Citizens Property Ins. Corp., 09-413 (La.App. 4 Cir. 12/16/09), 28 So.3d 543, wherein the Fourth Circuit held that | spendency of a cause of action suspends prescription for any class member who later files his own lawsuit.[2]
I first observe that plaintiffs’ petition is prescribed on its face. While careful not to list any dates, plaintiffs nonetheless alleged in paragraph XXXI of their petition that Exxon Mobil’s conduct occurred during the period of the effective dates of former La. C.C. art. 2315.3, which provided for punitive damages for injuries caused by the wanton or reckless disregard of public safety in the storage, handling, or transportation of hazardous or toxic substances. Article 2315.3 was repealed by Acts 1996, 1st Ex. Sess., No. 2, § 1, effective on April 16, 1996. Thus, by plaintiffs’ own allegation, their claims arose sometime before 1996, more than six years pri- or to suit being filed. As such, plaintiffs’ petition was prescribed on its face.[3]
*165 Since plaintiffs’ petition was prescribed on its face, plaintiffs had the burden of proving suspension or interruption of prescription. After reviewing the record de novo, I agree with the trial court that under the doctrine of contra non valentón, prescription did not begih to run against plaintiffs until the Grefer verdict in May 2001, which was when their cause of action was known or knowable. The record shows plaintiffs worked at the ITCO pipe yard for various periods between 1981 and 1992. Plaintiffs | fisubmitted evidence in the form of partial depositions and affidavits showing they first learned about radiation at the ITCO pipe yard from the Grefer verdict or by word of mouth' shortly after the Grefer verdict was rendered.
Plaintiffs argue that the Grefer verdict was insufficient to start the running of prescription, but rather it only indicated something might be wrong. I disagree. I find the Grefer verdict reported in the media in May 2001 provided sufficient facts to alert a reasonable person that he was a victim of a tort. The record shows plaintiffs learned from the verdict and related news reports that the grounds at the ITCO pipe yard were contaminated with radiation. Upon learning of the verdict, many plaintiffs began talking to coworkers with whom they worked at ITCO. Within weeks of the verdict, many plaintiffs had contacted a lawyer. Many plaintiffs stated they were concerned about their possible exposure after learning of the Grefer verdict in late May or early June 2001. I find by plaintiffs’ own statements that they were alerted to potential problems by the Grefer verdict, which was sufficient to excite inquiry and begin the running of prescription.
Having found prescription began running in May 2001, plaintiffs had until May 2002 to file suit but did not file until December 2002. Plaintiffs contend prescription was suspended by the Pollard lawsuit filed in May 2001, of which they were members of the purported class. Under La. C.C.P. art. 596, prescription is suspended on the filing of a class action petition as to all members of the purported class. Prescription begins to run again as to any person electing to be excluded from the class, thirty days from the submission of that person’s election form, or 30 days from the mailing of notice that the court has denied class certification.[4] La. C.C.P. art. 596(A).
*166 |7In Lester v. Exxon Mobil Corp., 09-1105, p. 9 (La.App. 5 Cir. 6/29/10), 42 So.3d 1071, 1076, writ denied, 10-2244 (La.12/17/10), 51 So.3d 14, (“Lester I”), of which I was a panel member, this Court clearly held that the Lester CDC plaintiffs opted out of the class action lawsuit, In re Harvey TERM, when they filed their petition prior to class certification and, thus, were denied the benefit of tolling under La. C.C.P. art. 596.[5] Because the plaintiffs in Lester I filed their individual lawsuit prior to a ruling on class certification, Lester I is distinguishable from Pitts and Taranto, where the plaintiffs filed their individual lawsuits after the trial court ruled on the issue of class certification.
Contrary to the majority, I do not find Lester I distinguishable from the present case (“Lester II ”) I believe our ruling in Lester I is controlling in the present case: “the plaintiffs, [b]y filing the Warren Lester case prior to a ruling on class certification, in the In Re Harvey Term Litigation opted out of the class action suit, and therefore the pendency of that suit did not serve to suspend prescription.” Lester I, 42 So.3d at 1076. As we explained in Lester I, a plaintiff, who chooses to file an independent lawsuit without waiting for the determination of class certification and while the issue of class certification is still open, cannot benefit from the tolling of prescription created by the class action. Id. at 1075-76. This is the basic tenet of law espoused in Lester I.
Other jurisprudence likewise holds that when a plaintiff files an individual lawsuit prior to a ruling on class certification, he may not rely on |Rthe class action to suspend prescription. See Duckworth v. Louisiana Farm Bureau Mut. Ins. Co., 11-837 (La.App. 4 Cir. 11/23/11), 78 So.3d 835, 837;[6] Dixey v. Allstate Ins. Co., 09-4443, 2011 WL 4403988 (E.D.La.9/21/11); and Wilkienson v. La. Farm Bureau Mutual Ins. Co., 11-1421 (La.App. 1 Cir. 3/23/12), 2012 WL 996539 (unpublished opinion).[7]
Although not expressly noted in Lester I, I point out that not only did the Lester I and II plaintiffs file their individual lawsuit prior to a ruling on class certification, but they also explicitly opted out of the class action in their separate lawsuit. Specifically, in paragraph XXIV of their petition, plaintiffs state:
Class actions have been filed on behalf of various named plaintiffs in the Leo Pollard case, the George Bowie case and the Camille Todaro case. Even if those *167 cases become certified and a certification judgment is affirmed on appeal, the petitioners herein do not desire to have their claims heard as a part of or in the context of those class actions.
Additionally, in paragraph XXV, plaintiffs state:
In the event that those cases become certified and affirmed on appeal, petitioners would nevertheless opt out with notices to class counsel and with the Court.
Plaintiffs made it abundantly clear that they would not and never intended to participate in the other class action lawsuits. Therefore, they should not benefit from the tolling of prescription provided by the class action, in which they had no desire or intent to participate. Plaintiffs cannot pick and choose those portions of the class action they wish to apply to their separate lawsuit. Plaintiffs would like all the benefits of a class action without any of the disadvantages. The law does not so provide.
| ¡Accordingly, based on the holding in Lester I, I find plaintiffs, who by specific language in their petition expressly opted out of Pollard and any other class action, could not rely on In re Harvey TERM, or Pollard which was consolidated into In re Harvey TERM, to suspend prescription. I do not find the Lester II plaintiffs present any distinguishing facts that would preclude the application of the basic tenet of law we espoused in Lester I.
Plaintiffs’ claims in Lester CDC were filed more than one year after prescription began running and nothing interrupted or suspended prescription; therefore, I believe their claims are prescribed and all other issues raised by the parties in their appeals are moot.

. When a trial court incorrectly applies a principle of law that materially affects the outcome and deprives a party of substantial rights, it commits legal error. Evans v. Lungrin, 97-541, p. 2 (La.2/6/98), 708 So.2d 731, 735. Applying the wrong burden of proof is inherently prejudicial because it casts a more onerous standard than the law requires on one of the parties. Leger v. Leger, 03-419 (La.App. 3 Cir. 7/2/03), 854 So.2d 955, 957. When a trial court commits prejudicial legal error, the appellate court is not bound by the manifest error standard but rather must conduct a de novo review of the record if it is complete. Evans, 708 So.2d at 735.

. After plaintiffs filed their appellee brief, the Louisiana Supreme Court affirmed Taranto in Taranto v. Louisiana Citizens Property Ins. Corp., 10-105 (La.3/15/11), 62 So.3d 721.

. Contrary to the majority, I believe the trial court's reliance on Levy v. Stelly, 277 So.2d 194 (La.App. 4th Cir.1973) as a basis for concluding plaintiffs’ petition was not prescribed on its face was misplaced. In Levy, the Fourth Circuit found that where a second suit was filed prior to abandonment, voluntary dismissal or failure to prosecute an origi *165 nal demand, the interruption of prescription provided by the first suit is still viable at the time of the filing of the second suit. In Levy, the plaintiff first filed suit in state court within one year of the accident. Thereafter, more than one year from the date of the accident, plaintiff filed a second suit in federal court. He chose to proceed in federal court and the state court dismissed his first suit. Because the first suit was still pending at the time the federal court suit was filed, the court held the federal suit was not prescribed under La. C.C. art. 3519, now article 3463, despite the subsequent dismissal of the first suit. Article 3463 provides that prescription is interrupted by the filing of a suit in a competent court in the proper venue. The interruption continues as long as the suit is pending. However, interruption is considered as rlever having occurred if the plaintiff abandons, voluntarily dismisses the action, or fails to prosecute it at trial.
I find Levy distinguishable because it did not involve a class action, which is governed by the more specific articles of La. C.C.P. arts. 591, et seq. Additionally, although plaintiffs' petition in the instant case referenced pending class action lawsuits, the petition never stated the date the class action suits were filed so as to purportedly overcome prescription on the face of their petition under the Levy rationale as relied upon by the trial court.

. In this case, class certification of In Re Harvey TERM, into which Pollard was consolidated, was denied by the Civil District Court for the Parish of Orleans on April 14, 2008.

.Lester I involved the wrongful death claims of the spouses of Murphy Gauthreaux and Leonardus Meerman, who were two of the 26 plaintiffs transferred from the In re Harvey Term litigation in Civil District Court for the Parish of Orleans to the 24th Judicial District Court. Mr. Meerman's children also asserted a wrongful death claim for their father. The trial court found that the wrongful death claims were prescribed. The issue in Lester I was whether the amending petition wherein the spouses and children asserted a wrongful death claim related back to either In re Harvey TERM or to Lester CDC. This Court found that the plaintiffs in Lester CDC opted out of In Re Harvey TERM by filing Lester CDC prior to a ruling on class certification and, therefore, the class action suit did not serve to suspend prescription. As such, the plaintiffs’ wrongful death claims could not relate back to In Re Harvey TERM. This Court further determined the plaintiffs' wrongful death claims did not relate back to Lester CDC.

. The Louisiana Supreme Court has granted writs in this case, but has yet to render a decision. Duckworth v. Louisiana Farm Bureau Mut. Ins. Co., 11-2835 (La.3/30/12), 85 So.3d 99.

. La. C.C.P. art. 2168 provides that unpublished opinions of a court of appeal shall be posted by such courts on the courts’ Internet websites and that those posted opinions may be cited as authority. Wilkienson is posted on the Louisiana First Circuit Court of Appeal’s website.